UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**BEAU CARLTON,**

    **Plaintiff,**

**v.**                                                       **Case No: 5:23-cv-539-JSM-PRL**

**COMMISSIONER OF SOCIAL
SECURITY,**

    **Defendant.**

### REPORT AND RECOMMENDATION[1]

Plaintiff appeals the administrative decision denying his application for a period of disability and disability insurance benefits ("DIB"). Upon a review of the record, the memoranda, and the applicable law, I recommend that the Commissioner's decision be affirmed.

**I. BACKGROUND**

For the sake of convenience, the administrative history, which is not in dispute, is copied from the Government's brief:

> On October 23, 2020, Plaintiff filed an application for disability insurance benefits, alleging disability beginning October 1, 2019 (Tr. 20, 99-100). The agency denied the application at the initial and reconsideration levels (Tr. 102-105, 113-116). After an administrative hearing (Tr. 40-72), the ALJ issued an unfavorable decision dated February 16, 2023 (Tr. 20-34). The

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

> Appeals Council denied Plaintiff's request for review on July 3, 2023 (Tr. 1-5).

(Doc. 9 at 1-2).

At the time of the ALJ's decision, Plaintiff was 48 years old. (Tr. 33, 45). Plaintiff has a high school education and past work as a sheriff's deputy, correction officer, department store manager, and automobile salesperson. (Tr. 32, 68, 213). Based on a review of the record, the ALJ found that the claimant has the severe impairments of diabetes mellitus, diabetic neuropathy, irritable bowel syndrome, gastroesophageal reflux disease, torticollis, major depressive disorder, anxiety with panic disorder and post-traumatic stress disorder. (Tr. 22). The ALJ found that the claimant did not have an impairment or combination of impairments that meets or medically equaled an impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the listings) or that functionally equaled the listings. (Tr. 23).

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> The claimant has the ability to lift, carry, push and pull twenty pounds occasionally (up to one-third of the day), and ten pounds frequently (up to two-thirds of the day). The claimant can sit for four hours at a time and a total of eight hours during an eight-hour day and stand or walk for one hour at a time and a total of four hours during an eight-hour day. He requires the use of a cane for uneven terrain but not for ambulation on flat surfaces. He can occasionally stoop, crawl and climb ladders and stairs. He can frequently balance. He can frequently handle and finger bilaterally for gross and fine manipulation and has no other limits concerning manipulation, vision, or communication. The claimant has environmental limitations precluding concentrated exposure to work hazards including unprotected heights and dangerous machinery. Mentally, the claimant cannot perform complex tasks but can perform simple, routine tasks, with concentration on those tasks for two-hour periods with normal breaks and a lunch.

(Tr. 25).

Based on the RFC, and considering the testimony of a vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the representative jobs of office helper, retail clerk, and merchandise marker. (Tr. 33). Accordingly, the ALJ determined Plaintiff was not disabled from October 1, 2019 (the alleged onset date), through the date of decision. (Tr. 33).

## II. STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as

adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (first citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); then citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

### III. DISCUSSION

Plaintiff raises three issues on appeal: (1) whether the ALJ applied the correct legal standards to the opinion of Dr. Tindall; (2) whether the ALJ applied the correct legal standards to the opinion of Dr. McCarthy; and (3) whether the ALJ applied the correct legal standards to the questionnaire completed by Dr. Butler.

#### A. THE ALJ'S CONSIDERATION OF THE OPINIONS OF DR. TINDALL

The Court first turns to Plaintiff's argument that the ALJ failed to apply the correct legal standards to the opinion of Dr. Tindall, a consultative examiner. Plaintiff specifically argues that the ALJ "failed to discuss" the factor of supportability when considering Dr. Tindall's opinion. (Doc. 8 at 7).

As a preliminary matter, Plaintiff acknowledges that his claim is subject to the new regulatory framework for evaluating medical opinions. For claims filed on or after March 27, 2017, the Social Security Administration has issued new revised regulations regarding the evaluation of medical evidence, including medical source opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (final

rules) ("We are revising our rules to ensure that they reflect modern healthcare delivery and are easier to understand and use. We expect that these changes will help us continue to ensure a high level of accuracy in our determinations and decisions."). In this case, Plaintiff filed his application in 2020, thus the new rules apply.

The new regulations impact agency policy in several important respects and contain several significant changes to prior medical evidence rules. *See* 81 Fed. Reg. at 62,560. To begin, the revised regulations redefine how evidence is categorized. Under the revised regulations, there are five categories of evidence: (1) objective medical evidence; (2) medical opinions; (3) other medical evidence, (4) evidence from nonmedical sources; and (5) prior administrative medical findings. See 20 C.F.R. § 416.913(a) (2017).

Second, the definition of "medical opinion" has been considerably revised. For claims filed by adults on or after March 27, 2017, the regulations provide:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
>
> Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 416.913(a)(2) (2017).

Third, for claims filed on or after March 27, 2017, the regulations change how the agency considers medical opinions and prior administrative medical findings. *See* 20 C.F.R. § 416.920c (2017). Notably, the regulations no longer use the term "treating source," but refer to "your medical source(s)." 20 C.F.R. § 416.920c (2017). The Commissioner intentionally chose not to retain the "treating source rule" that previously required deference to treating source opinion evidence. *See* 82 Fed. Reg. at 5883. Rather, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017). The ALJ will, instead, consider all medical opinions through the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant including length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. *Id.* § 416.920c(c)(1)-(5).

Turning to Plaintiff's argument, Dr. Tindall conducted a consultative physical evaluation at the request of the Office of Disability Determinations. (Tr. 858-861). Plaintiff specifically relies upon Dr. Tindall's statement that "a cane is medically necessary when ambulating to prevent falling because of balance problems and to decrease pain." (Tr. 861).

The ALJ expressly discussed Dr. Tindall's evaluation and opinion in his decision (as well as a similar opinion of consultative examiner Dr. McCarthy), finding both of the consultative examiner's opinions regarding cane use only "partially persuasive." (Tr. 29, 31).

> Dr. Tindall diagnosed the claimant with diabetes mellitus with diabetic neuropathy (Ex. 15F) and unspecified depressive disorder, generalized anxiety disorder with panic, posttraumatic stress disorder with mild alcohol abuse disorder for which the

> claimant was assessed to need the cane for ambulation balance but both Dr. Tindall and Dr. McCarthy failed to identify definitive specific job-related limitations. . . . Dr. Tyndall [sic] provided a diagnosis of symptomatology consistent with diabetic neuropathy of the right and left upper and lower extremity for which he opined that a cane is necessary when ambulating to prevent falling because of balance problems and to decrease pain. Notably he also diagnosed mental impairments although he is not a psychiatrist but otherwise failed to identify any specific job-related limitations (Ex. 15 F). This opinion is partially persuasive but the DDS finding of the need for the use of a cane only when walking on uneven terrain is more consistent with the evidence of record.

(Tr. 31).

As a preliminary matter, Plaintiff apparently fails to acknowledge the ALJ's express finding regarding the opinions of the consultative physicians: "[t]he opinions of the DDS physicians finding the claimant capable of sedentary to a light range of work with the ability to stand/walk for four hours with the use of a cane for ambulation on uneven terrain are deemed consistent with the evidence of record and are found to be persuasive." (Tr. 31). In other words, the ALJ's determination regarding the supportability and consistency of Dr. Tindall's opinion pertained to a comparison of that opinion with the entire medical record, not just Dr. Tindall's own findings. Contrary to Plaintiff's argument, the ALJ's discussion of the evidence confirms that he considered the factor of supportability in regard to Dr. Tindall's opinion.

Notably, while Plaintiff cites *Filmore v. Comm'r of Soc. Sec.*, No. 5:20-CV-478-PRL, 2022 WL 2251075, at *6 (M.D. Fla. Mar. 23, 2022), Plaintiff's reliance on this case is misplaced. In *Filmore,* the undersigned recommended remand in part due to the ALJ's failure to explain "how (or if) he considered the extent to which Dr. Britto's own treatment records provided support for his opinions." *Id.* at *6. *Filmore*, however, is easily distinguished from

the instant case because the reasoning cited by Plaintiff involved the ALJ's inadequate explanation of how a treating physician's records provided support for his opinions. *Id.* at *6. Here, Dr. Tindall was a consultative examiner, thus there are no treating records from Dr. Tindall to consider relative to supportability. Rather, the ALJ expressly discussed the extent to which Dr. Tindall's opinion was consistent with the evidence of record as a whole. Further, the ALJ explicitly discussed Dr. Tindall's opinions and findings in at least three different paragraphs, including devoting an entire paragraph to discussing why he found the opinion partially persuasive. The ALJ specifically explained that the finding of the need for the use of a cane only when walking on uneven terrain was more consistent with the evidence of record. (Tr. 31).

Plaintiff's argument is essentially that the ALJ should have fully credited Dr. Tindall's opinion (as well as Dr. McCarthy's opinion, as discussed below) that the use of a cane when ambulating was necessary without limiting cane use to uneven terrain. Plaintiff suggests that the ALJ erred by not addressing this aspect of the opinion and the opinion's supportability. Plaintiff's argument assumes that the ALJ was required to not only specifically address each and every limitation opined by Dr. Tindall, but also to specifically discuss those limitations relative to supportability. As explained below, Plaintiff's argument is not persuasive.

The Court finds that the ALJ properly considered Dr. Tindall's opinion in view of the relevant factors, including supportability and consistency. The ALJ extensively discussed the opinion in connection with the rest of the evidence and expressly explained how he arrived at the RFC. For example, the ALJ specifically addressed the evidence described above, including the medical record as a whole. He noted that treatment notes from the VA showed that Plaintiff was able to "walk regularly." (Tr. 30). He noted that medical records reflected

Plaintiff responded favorably to treatment and had complaints of neck pain related to torticollis. (Tr. 30). The ALJ also extensively discussed the opinions and findings of the consultative physicians, Dr. Tindall and Dr. McCarthy. (Tr. 31). For example, the ALJ observed that Dr. McCarthy's physical examination produced largely normal findings. (Tr. 668). On multiple occasions, the ALJ cited Plaintiff's VA disability rating of 90% and noted that it is "based upon different criteria than the Social Security's definition for disability." (Tr. 31). That said, it is also clear that the ALJ reviewed and considered the underlying medical records from the VA as part of his overall analysis. (Tr. 30). The ALJ noted that the objective medical evidence was "rather limited," but that it demonstrated a history of diabetes mellitus and related complications such as diabetic neuropathy. (Tr. 30). The ALJ's decision contains a summary of the VA medical records, including treatment notes. (Tr. 30).

The ALJ specifically stated that Plaintiff's VA treatment notes reflected his ability to "walk regularly," that there was a general lack of objective medical evidence, and that Plaintiff had a history of alcohol dependence. (Tr. 30). Indeed, the VA treatment notes reflect Plaintiff as having "adequate coordination and gait." (Tr. 773). The ALJ's opinion also included extensive discussion of Plaintiff's activities of daily living including that he lives alone in an RV, performs personal care independently, shops, cooks, performs light household chores, manages his own finances, and drives a car. (Tr. 30).

The ALJ is required "to consider all of the medical and other evidence of record[.]" *Ramos v. Comm'r of Soc. Sec.*, 2021 WL 960688, at *6 (M.D. Fla. Mar. 15, 2021). Importantly, the ALJ is not required to use "magic words in a claimant's RFC assessment." *Carbone v. Comm'r of Soc. Sec.*, 2017 WL 1476283, at * 3 (M.D. Fla. Mar. 3, 2017). Further, "there is no requirement that the ALJ include every limitation [from a physician's opinion] verbatim" into

an RFC determination. *Hilton v. Comm'r Soc. Sec.*, 2016 WL 561364, at *3 (M.D. Fla. Feb. 12, 2016); *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019) (noting that the ALJ is not required "to specifically address every aspect of an opinion or every piece of evidence in the record"). There is also no requirement that the ALJ use any "magic language" or follow a particular formula when addressing the supportability and consistency factors. *See* 20 C.F.R. § 404.1520c(b)(2); *Cook v. Comm'r of Soc. Sec.*, 2021 WL 1565832, at *5 (M.D. Fla. Apr. 6, 2021) ("While he may not have used the words 'supportability' and 'consistency,' the ALJ's discussion of [the] opinions and findings regarding the record was based on those factors."), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

The undersigned finds that the ALJ's decision and RFC determination was based on substantial evidence. In reaching his decision, the ALJ considered the record as a whole, including the opinions of the consultative examiners, Dr. Tindall and Dr. McCarthy, that he credited as partially persuasive. (Tr. 31). The record reflects that the ALJ properly considered Dr. Tindalls's opinion in light of the relevant factors, including supportability and consistency. Also, contrary to Plaintiff's argument, the ALJ was not required to use any particular language or to specifically address every aspect of Dr. Tindall's opinion. *Coley*, 771 F. App'x at 917. Accordingly, the ALJ did not err in considering the opinion of Dr. Tindall.

### B.  The ALJ's Consideration of Dr. McCarthy's Opinion

Next, Plaintiff argues that the ALJ's also erred in considering the opinion of Dr. McCarthy. Plaintiff makes the same argument discussed above related to Dr. McCarthy's opinion that Plaintiff's use of a cane was medically necessary. (Tr. 668-69). Plaintiff contends that the ALJ failed "to discuss" the supportability and consistency factors as to Dr. McCarthy's opinion. (Doc. 8 at 13). As already observed, Plaintiff's argument is not

persuasive. The ALJ thoroughly discussed both Dr. McCarthy and Dr. Tindall's opinions, and it is apparent that he adequately considered the opinions relative to the factors of supportability and consistency. Ultimately, the ALJ found those opinions partially persuasive because "the need for the use of a cane only when walking on uneven terrain is more consistent with the evidence of record." (Tr. 31). The undersigned's above analysis regarding the ALJ's consideration of Dr. Tindall's opinion is equally applicable to the ALJ's consideration of Dr. McCarthy's opinion, and I submit that there is no error.

Plaintiff also argues that the ALJ erred by failing to credit Dr. McCarthy's opinion to the extent that he opined that Plaintiff was limited to occasional reaching, handling, and grasping. (Doc. 8 at 14, Tr. at 669). Plaintiff apparently takes issue with the ALJ's RFC finding that Plaintiff could "frequently handle and finger bilaterally for gross and fine manipulation." (Tr. 25).

It is apparent that the ALJ thoroughly considered Dr. McCarthy's opinion and findings, including those related to reaching, handling, and grasping. The ALJ expressly noted that Dr. McCarthy's examination results included 5/5 strength, and intact fine and gross manipulation. (Tr. 28). The ALJ also expressly noted that Dr. McCarthy opined that Plaintiff was capable of occasionally reaching, handling, and grasping. (Tr. 28). As already noted, the ALJ found Dr. McCarthy's opinion partially persuasive. The ALJ was not required to expressly discuss every aspect of the opinion or to adopt all aspects of the opinion as part of the RFC. It is apparent from the record that the ALJ considered, but only partially credited, Dr. McCarthy's opinion regarding reaching, handling, and grasping. It is also apparent that Dr. McCarthy considered Dr. McCarthy's opinion in terms of the factors of supportability and consistency, noting the findings that Plaintiff had normal grip strength in both hands and

good fine and gross manipulative skills. Again, the ALJ is not required to use any "magic language" or follow a particular formula when addressing supportability and consistency. *See Cook,* 2021 WL 1565832, at *5. It is apparent that the ALJ's discussion of Dr. McCarthy's opinions and findings was based on those factors. The undersigned finds that the ALJ did not err when considering the opinion of Dr. McCarthy.

### C. The ALJ's Reliance on the Vocational Expert Testimony

The Court now turns to Plaintiff's argument that the ALJ erred in improperly relying on the vocational expert's testimony because the hypothetical posed to the vocational expert failed to include the need for a cane for ambulation and mentioned cane use only as set forth in the RFC. (Doc. 8 at 9).

Plaintiff's argument on this point is premised on the assumption that the ALJ assigned an RFC to Plaintiff that failed to include all the limitations opined by the consultative examiners. As explained above, that argument is unavailing. It is apparent that the ALJ's decision thoroughly considered Plaintiff's condition as a whole, and as observed above, substantial evidence supports the ALJs findings regarding Plaintiff's RFC. The ALJ's RFC assessment need not mirror the opinion of any doctor, nor was he required to adopt all of the limitations the doctors assessed. *See Castle v. Colvin*, 557 F. App'x, 849, 853 (11th Cir. 2014). Here, the ALJ presented a thorough, comprehensive hypothetical to the vocational expert that specifically identified the functional limitations consistent with Plaintiff's RFC. (Tr. 68-71). The vocational expert's testimony regarding the jobs that a person with Plaintiff's RFC could perform given those limitations constituted substantial evidence upon which the ALJ could rely. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The ALJ is not required to

include findings in the hypothetical that he had properly rejected as unsupported. *Crawford* v. *Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004).

### D. THE ALJ'S CONSIDERATION OF DR. BUTLER'S QUESTIONNAIRE

Finally, Plaintiff argues that the ALJ erred by failing to apply the correct legal standards to a questionnaire completed by George Butler, Ph.D., relating to Post Traumatic Stress Disorder (PTSD). To summarize, Dr. Butler indicated via checking boxes on a form entitled "Initial Post Traumatic Stress Disorder Disability Benefits Questionnaire," that Plaintiff's diagnoses included PTSD, alcohol use disorder, and major depressive disorder. (Tr. 879-881). Plaintiff concedes that this form was part of the VA rating process. (Doc. 8 at 18). Plaintiff characterizes the form as opinions and argues that the ALJ failed to even mention Dr. Butler's opinions, "let alone explain how he considered the 'supportability' and 'consistency' factors." (Doc. 8 at 18).

In response, the defendant concedes that the ALJ did not expressly mention the questionnaire completed by Dr. Butler, but notes that the ALJ expressly cited to the exhibit containing the questionnaire in the body of the opinion. (Tr. 28, 30). Indeed, the ALJ did specifically cite to the relevant exhibit in the context of noting the Plaintiff's VA disability rating of 70% for PTSD. (Tr. 28, 30, 872-74). Defendant contends that the ALJ did properly consider Dr. Butler's questionnaire when evaluating the medical evidence.

Further, Defendant argues that the questionnaire does not constitute a medical opinion because it does not state what Plaintiff could still do despite his impairments or state any work-related restrictions. (Doc. 9 at 9). Indeed, under the regulations, a medical opinion is defined as follows:

> a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more

> impairment-related limitations or restrictions in the following abilities:...
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).

Notably, in the questionnaire, Dr. Butler did not opine as to what Plaintiff could still do despite Plaintiff's diagnoses nor did Dr. Butler opine as to whether and how those diagnoses affected Plaintiff's ability to preform the physical or mental aspects of work activities, perform other demands of work, or adapt to environment conditions. (Tr. 879-894). The questionnaire expressly states it is a diagnostic summary and details diagnoses, symptoms, and impairments. Further, it contains Plaintiff's self reported history. (Tr. 879-894). While Dr. Butler did find Plaintiff to suffer from social and occupational impairment, these generalized findings, without further detail, are insufficient to constitute a medical opinion under 20 C.F.R. § 404.1513(a)(2). Notably, the questionnaire lacks any information about what Plaintiff can still do despite his diagnosis of PTSD. The undersigned finds that the questionnaire completed by Dr. Butler does not constitute a medical opinion under the regulations. *See Kuilan v. Kijakazi*, No. 8:22-CV-2603-AEP, 2023 WL 8927847, at *4 (M.D.

Fla. Dec. 27, 2023) (finding that responses to a similar "Post Traumatic Stress Disorder Disability Benefits Questionnaire" did not constitute a medical opinion under 20 C.F.R. § 404.1513(a)(2)). Consequently, the ALJ did not fail to apply the correct legal standards to Dr. Butler's responses to the questionnaire.

Based upon a review of the record, the Court finds that substantial evidence supports the ALJ's findings, the RFC determination, and the conclusion that the Plaintiff was not disabled. *See Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1996) ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.").

### IV.   RECOMMENDATION

For the reasons stated above, I recommend that the ALJ'S decision be AFFIRMED under sentence four of 42 U.S.C. § 405(g).

**DONE and ENTERED** in Ocala, Florida on August 1, 2024.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties